ANDREWS v. OWENS, MELTON & BARKER.

(Court of Civil Appeals of Texas. Texarkana. Nov. 6, 1913. Rehearing Denied Jan. 8, 1914.)

BROKERS (§ 86*)—ACTIONS FOR COMMISSIONS— SUFFICIENCY OF EVIDENCE — CAUSE OF EXCHANGE.

Evidence *held* to show that, not plaintiffs, but a real estate company was the procuring cause of the exchange of land made by defendant.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

Appeal from Grayson County Court; J. Q. Adamson, Judge.

Action by Owens, Melton & Barker against H. H. Andrews. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

Freeman & Batsell, of Sherman, for appellant. Hamp P. Abney and Jones & Hassell, all of Sherman, for appellees.

WILLSON, C. J. When the record was first before us, we were of the opinion that the judgment of the court below should have been in favor of appellant instead of in favor of appellees, but concluded we were without power on any of the assignments carried into appellant's brief to grant the relief he was entitled to. Since the motion was filed, we have again carefully considered the assignments, and have concluded that appellant's special charge No. 15, refused by the court, should be construed as a request to instruct the jury peremptorily to find in his favor, and that we should have sustained the second assignment, in which appellant complained of the refusal of the court to give said charge to the jury.

It appeared from testimony that one Garrison, a real estate broker in Hillsboro, having been authorized by Glover to sell or exchange his lots in that city, on April 14, 1912, wrote the Russell Realty Company, real estate brokers in Sherman, to ascertain if said company had any land near Southmayde which the owners thereof would exchange for the Hillsboro lots. Said Russell Realty Company, and appellees also, before that time had been authorized by appellant to sell his land or exchange it for other property. April 15, 1912, the Russell Realty Company, replying to Garrison's letter, mentioned several tracts of land, among them the one belonging to appellant, which, they said, the owners might exchange for said lots, and suggested to Garrison that he bring the owner of the lots to Sherman and look at the lands they had mentioned. Two or three days after he received the letter Garrison, having first arranged with Glover to follow him as soon as the latter returned from a trip he wished to make to another portion of the state, went to Sherman. He was accompanied by one Osborne, who wished to buy land in Grayson county. On reaching Sherman, Garrison, with Osborne, called at the office of the Russell Realty Company, and they were shown several tracts of land. It seems that the purpose of the inspection then made was to ascertain if any one of the tracts would suit Osborne. Garrison expected Glover to come to Sher-

man the next day, and arranged with the Russell Realty Company to then take him to see other tracts, among them being the one belonging to appellant. Garrison and Osborne then left the office of the Russell Realty Company, and a short time thereafterwards met appellees Owens and Melton, and, according to the testimony of Owens, asked them "if they had any trading propositions." Owens and Melton replied that they had, mentioning several tracts of land, among the number being the one belonging to appellant. A result of the conversation which followed between Garrison and Owens and Melton was that Owens and Melton sent for appellant and introduced him to Garrison. This introduction and what followed it, as testified to by Owens, was as follows: "I says to both of them, 'Now, this is Mr. Andrews, who has the land for sale, and this is the man, Mr. Andrews, who has the brick property for sale. You gentlemen talk the matter over. You can describe the property better than I can and maybe you can interest each other.' They stepped off a little ways and began to talk, and I moved toward them to see what they said about it. They talked the matter over for a considerable time, and after talking the matter over for a while some one suggested that we go home, and Mr. Garrison said he wanted to see the land in the morning. In a little while after him and Andrews began talking and Garrison said he wanted to see the land in the morning, Melton says, 'I will go out, since you want to go in the morning;' and Garrison says, 'It is not necessary. I am going out that way in the morning with Mr. Russell, and will go by there and take a look at it as I go out or come back, and if I like it I will take it up to-morrow when we get back.' That was about all that was said about the trouble, and we bade each other good evening and went home. I never knew in the morning what they did, because I thought the gentlemen were going with Mr. Russell the next morning and we would see him again. I never saw Mr. Garrison any more until the trial came up. The next I heard of the deal was a few days later. I met Mr. Andrews and asked him about the trade, and he says, 'I don't know, I have not seen the (Hillsboro) property yet;' and I asked him if he thought enough of the matter to go see it, and he said he thought he did, and a few days afterwards I saw him and asked him what he thought about the trade, and if there was anything to it or not, and he says, 'Well, I don't know, there might be;' and I says, 'You went and looked at it?' and he said, 'Yes;' and I says, 'Do you think there is any likelihood of a trade?' and he says, 'Yes, there might be. I thought enough of it to draw some papers to that effect, and if the papers come up all right it will be a trade;' and I said, 'I am glad of it. That will count one for us this month;'

and he hesitated a little, and I says, 'How about the commission? Was that considered in the deal?' and he says, 'Well, you will have to see Bill Russell;' and I says, 'What has Bill Russell got to do with it?' and he says, 'He claims the commission;' and I told him, 'I have no recourse with him at all, never had any business with him in my life, and don't know him in this transaction at all;' and I says, 'How is that—didn't we introduce you to the man first, and didn't we have the place listed?' and he says, 'Yes, but Russell went down there, and he claims the commission.' I says, 'I do, too;' and he says, 'Well now, you and him for that.' I says, 'I have nothing to do with him;' and it went on that way until one day I asked him, 'Mr. Andrews, have you got the papers yet?' and he said 'Yes.' I had told him before that that I was going to hold him for the commission, and he said, 'Well, crack your whip.' I says, 'I think we are entitled to it, and if we are not we don't want it.' He says, 'Well, just crack your whip;' and I says, 'I should like to ask you to deposit the money with the court or in the bank until the thing is settled. I will contend for my commission.' He did not say anything then, but a day or two later he mentioned it again and says, 'You will have to see Bill Russell about that. I have paid Bill Russell the money.'" The "Bill Russell" referred to, it seems, was the president of the Russell Realty Company. From other testimony it appeared that Glover reached Sherman on the day following the day on which Owens introduced Garrison and appellant to each other, and, through said Russell Realty Company, began, and several days thereafter concluded, negotiations with appellant, which resulted in the exchange between them of their respective properties. It conclusively appeared that all appellees ever did in connection with the matter was to introduce Garrison to appellant. After that introduction the negotiations, commenced before it occurred, between Garrison as Glover's broker and the Russell Realty Company as appellant's broker, as shown by the letters referred to, were resumed, resulting, as stated, in the exchange between Glover and appellant.

From the statement made it conclusively appears that the Russell Realty Company, and not appellees, was the "procuring cause" of the exchange made by appellant. That company first began the negotiations with Glover's broker, and afterwards assisted appellant in concluding same with Glover himself. All appellees did was to introduce Glover's broker, Garrison, to appellant, after appellant's broker, the Russell Realty Company, on appellant's behalf, had begun negotiations with said Garrison. The special charge refused should have been given to the jury. The error of the court in refusing to give it requires a reversal of the judg-

ment, and, it appearing that on the testimony heard a recovery should be denied to appellees, and there being nothing in the record indicating the testimony might be materially different on another trial, we think judgment should be here rendered that they take nothing by their suit. Therefore such a judgment will be here rendered.